Henry P. Canclini and Ruth Canclini v. Commissioner.
Canclini v. Commissioner
Docket No. 58116.
United States Tax Court
T.C. Memo 1957-245; 1957 Tax Ct. Memo LEXIS 3; 16 T.C.M. (CCH) 1127; T.C.M. (RIA) 57245; December 31, 1957
*3 Morris M. Grupp, Esq., Mills Tower Building, San Francisco, Calif., and Leon Schiller, Esq., for the petitioners. Charles W. Nyquist, Esq., for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: The respondent determined a deficiency of $166.68 in the petitioners' income tax for 1951. Issues presented for determination are the correctness of the respondent's action in disallowing (1) a portion of a deduction taken for depreciation of an automobile, (2) a portion of deductions taken for repairs to, and gas and oil for, automobile, (3) deductions taken for caulk boots, union dues and taxes, and (4) a deduction taken for a chain saw. Findings of Fact All facts that have been stipulated are found accordingly. The petitioners are husband and wife with residence at Ukiah, California. During 1951 they were residents of Mendocino, California, and filed their joint income tax return for that year with the collector for the first district of California. Since petitioner Ruth Canclini is joined here only by virtue of such joint return, the term "petitioner" will hereinafter be used with reference to Henry P. Canclini. During the first part *4 of 1951 the petitioner was employed by the Bank of America in Fort Bragg, California. Thereafter and beginning on or about May 1, 1951, the petitioner was employed by Union Lumber Company, Fort Bragg, California, for one month. Beginning in August 1951 and continuing through the remainder of 1951 the petitioner was employed by Donald C. Philbrick, Comptche, California. His employment with Union Lumber Company and with Philbrick was as a "faller" in which he engaged in "falling" or cutting down trees and sawing them into marketable logs at a stated amount per thousand board feet of logs. Upon his entering the employment of an employer a certain boundary of timberland or "layout" was designated as the site on which he would work. When that was completed another "layout" was designated, and so on until the employer's logging operations were completed or suspended. His employment with Union Lumber Company was terminated as a result of the company having completed its logging operations in the area where petitioner worked. The petitioner provided his own tools and equipment which he used during the time he worked for Philbrick. These consisted of a chain saw, a tool box and small tools *5 and small parts for chain saw repairs, two axes, a peeling bar, six wedges, gun sticks, springboards, shims and plates, sledge hammers, a pocket tape, and gas and oil cans. He also furnished oil and gas for his chain saw. In addition, he provided a special safety hat and caulk boots for his personal wear. Much of the equipment was left in the woods and not taken out each day. Generally the equipment taken out of the woods at the end of the day's work was gas and oil cans, and any broken equipment in need of repairs. Spare tools such as a spare sledge hammer, a spare axe, and spare wedges ordinarily would not be removed from the automobile and consequently were transported back and forth daily. The distance traveled by petitioner in going from his home in Mendocino to the site of the logging operation of the Union Lumber Company on which the petitioner worked was approximately 30 miles, approximately 12 miles of which was over a dirt road or logging road. The Union Lumber Company did not provide transportation for "fallers" and no public transportation was available between the petitioner's home in Mendocino and the logging site of the Union Lumber Company where he worked. An uncle *6 of the petitioner worked on the same site. He and the petitioner traveled to and from work together and alternated in using their automobiles to drive to work. The petitioner's car which he drove on the alternate days of the month he worked for the Union Lumber Company was a 1947 Chevrolet coupe. The distance traveled by petitioner in going from his home in Mendocino to the site of Philbrick's logging operation was approximately 26 miles, approximately the last 11 miles of which was over a logging road. Philbrick did not provide transportation between petitioner's home and the logging site nor was any public transportation available between those places. No living accommodations were available at or near the logging site. The petitioner's uncle worked at the Philbrick logging site where petitioner worked. He and petitioner traveled to and from work together and alternated in using their automobiles to drive to work. The spare equipment usually transported between the site and their homes would be transferred from one automobile to another each day as a result of their driving their cars on alternate working days. The petitioner worked 5 days a week during his employment by Philbrick. *7 In the latter part of August 1951 he acquired a new Buick at a cost of $3,258.56, including tax. Thereafter during 1951 he used the Buick to drive to and from work on alternate working days and for personal purposes over the weekends. The steering mechanism of the Buick was not designed to take the stresses and strains imposed on it by driving over the logging roads. As a consequence it was not a suitable or desirable automobile for the petitioner's purpose of driving to work and in February 1952 he purchased another automobile for that purpose. Thereafter he did not use the Buick for driving to work except for a period in 1954 He continues to own the Buick. When the petitioner began working as a "faller" in 1951 he paid $435.44 for a chain saw which thereafter in that year he used in his work. The useful economic life of the chain saw under the conditions in which he used it in 1951 was approximately 1 year. During 1951 the petitioner at all times kept possession of his chain saw and other equipment and used it himself in the course of his employment. He did not rent equipment to anyone during that year. In "Schedule F. - Income from Rents and Royalties" of their income tax *8 return for 1951, the petitioners reported a loss of $826.02 which they deducted in computing their taxable income for that year. In the schedule an amount of $717.34 was shown as income received from "Saw & equipment rental." From that amount the petitioners deducted, among others, the following items as attributable to rental in computing the above-mentioned amount of $826.02: Depreciation on automobile (Buick - 3-year life)
$452.58
Saw cost
435.44
Repairs to automobile
73.00
Gas and oil for automobile
104.00
Union dues
21.00
Caulk boots
41.61
Taxes
34.00
In determining the deficiency the respondent determined that the useful life of the Buick automobile was 4 years and that 20 per cent of the use of the automobile during 1951 was attributable to business purposes. Accordingly, of the deduction of $452.58 taken for depreciation on the automobile the respondent allowed $54.31 and disallowed the remainder of $398.27. The respondent determined that the item of saw cost of $435.44 represented the cost of petitioner's chain saw, and that the latter was a capital asset with a useful life of 3 years. As a consequence, he disallowed the entire deduction of *9 $435.44 and allowed one-third of the amount, $145.15, for depreciation of the saw. Respecting the items of repairs and oil and gas for the automobile totaling $177, the respondent determined that 20 per cent of the automobile's use was for business purposes and the remainder was for personal purposes. Accordingly, he allowed $35.40 of the $177 and disallowed the remainder of $141.60. The respondent determined that the items of union dues, caulk boots and taxes were not business expenses and disallowed them. Deductible depreciation of the petitioner's Buick automobile sustained as a result of its use in the petitioner's trade or business during 1951 amounted to $68. The $435.44 deducted for saw cost did not represent a capital expenditure but represented an ordinary and necessary expense of petitioner's trade or business. Of the deductions taken for repairs to, and oil and gas for, petitioner's automobile, the amounts of $36.50 and $52, respectively, represented ordinary and necessary expenses of the petitioner's trade or business. The deductions taken for union dues and caulk boots represented ordinary and necessary expenses of petitioner's trade or business. Opinion The petitioners *10 have taken the position that in the situation here presented it was necessary for petitioner Henry P. Canclini to use automotive equipment to travel between his home in Mendocino and the Philbrick logging site where he worked in 1951, that the use of his automobile for such purpose constituted its use in his business or trade and caused the depreciation of, the cost of repairs to, and the cost of gas and oil for, the automobile to be deductible as ordinary and necessary business expenses. The evidence shows that the petitioner's use of the automobile to travel between his home and the logging site where he worked was for a dual purpose, namely, for commuting between his home and the site and for the transportation of tools and equipment used by him in his employment. In Charles Crowther, 28 T.C. - (Sept. 30, 1957), the taxpayer was engaged in like employment as the petitioner here and used his automobile to travel or commute between his home and the logging sites where he worked and to transport tools and equipment used by him in his employment. In that case it was pointed out that it has long been held that commuting expenses are personal expenses and are not deductible as business *11 expenses. It also was there held that the rule was the same regardless of the distance commuted and even though public transportation was not available and living accommodations for the taxpayer and his family were not available at or near the place of his employment. In allowing a portion of the deductions taken for depreciation, repairs, and gas and oil, the respondent has recognized, and we think properly so, that the automobile, in addition to being used by the petitioner to commute to where he worked, also was used by him in his business or trade. In our opinion the record warrants the allowance for such use of larger amounts for depreciation, repairs, and gas and oil than were allowed by the respondent. Accordingly, we have found that deductible depreciation in the amount of $68 was sustained in 1951 with respect to the automobile, and that deductible business expenses for repairs to, and gas and oil for, the automobile were incurred in the amounts of $36.50 and $52, respectively. The respondent concedes on brief that the expenditures incurred by petitioner for chain saw, for caulk boots and for union dues were ordinary and necessary expenses incurred by petitioner in his *12 work as a "faller." We are unable to determine from the record what the deduction "Taxes" in the amount of $34 represents. Since the item has not been shown to represent an ordinary and necessary business expense, the respondent's action in disallowing it is sustained. In their petition the petitioners have assigned certain errors and made certain allegations of fact, all of which the respondent has denied, in his answer, and on brief have advanced certain contentions challenging the propriety of the administrative policy and procedures employed by the respondent prior to his determination of the deficiency here involved and challenging the propriety of his motives in making such determination. We have jurisdiction to consider and determine, and have considered and determined in the light of the evidence of record, the correctness of the respondent's determination of the deficiency here involved. However, we are without jurisdiction to consider and determine the propriety of the administrative policy and procedures the respondent employed prior to making such determination or to consider and determine the propriety of his motives in making such determination. Charles Crowther, *13 supra. Decision will be entered under Rule 50.